IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 5, 2014 Session

# IN RE CHANDLER M.[1]

**Appeal from the Juvenile Court for Franklin County**
**No. 11JV317    Hon. Thomas C. Faris, Judge**

_____

**No. M2013-02455-COA-R3-PT - Filed July 21, 2014**

_____

This is a termination of parental rights case in which the Tennessee Department of Children's Services filed a petition to terminate Father's parental rights to the Child. The trial court found that clear and convincing evidence existed to support the termination of Father's parental rights on the statutory grounds of abandonment, persistence of conditions, and confinement under a sentence of ten years or more. The court further found that termination of his rights was in the Child's best interest. Father appeals. We affirm the trial court's termination of Father's parental rights on the grounds of abandonment and confinement under a sentence of 10 years or more. However, we reverse the trial court on the ground of persistent conditions.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Affirmed in Part; Reversed in Part; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which THOMAS R. FRIERSON, II, J., joined. D. MICHAEL SWINEY, J., concurring in part, dissenting in part filing a separate dissenting opinion.

John M. Stewart, Winchester, Tennessee, for the appellant, Henry Y., III.

_____

[1]This court has a policy of protecting the identity of children in parental rights termination cases by initializing the last name of the parties.

Robert E. Cooper, Jr., Attorney General and Reporter, and Leslie Curry, Assistant Attorney General, Nashville, Tennessee, for the appellee, State of Tennessee, Department of Children's Services.

Janet M. Songer, Winchester, Tennessee, guardian ad litem for the minor, Chandler M.

**OPINION**

**I. BACKGROUND**

Chandler M. ("the Child") was born to Danielle M. ("Mother") and Henry Y., III ("Father") in February 2011. Mother and Father did not maintain a romantic relationship beyond the encounter which produced the Child. Mother did not list Father's name on the birth certificate and openly asserted that another man was the Child's father. While in Mother's care, the Child was removed by the Tennessee Department of Children's Services ("DCS") in August 2011. The Child was adjudicated as dependent and neglected. Mother was uncooperative with DCS's efforts to identify Father, causing DCS to test three other putative fathers before she disclosed his identity. Father was incarcerated when he learned that he might be the Child's father. Shortly thereafter, DCS filed a petition to terminate his and Mother's parental rights to the Child in July 2012.[2]

A hearing was held at which several witnesses testified. Father acknowledged his lengthy criminal history. He confirmed that he was released from jail in April 2011 only to be arrested again in December 2011 for violating probation and committing several other offenses. He stated that he was incarcerated from December 2011 until February 2012 and that he was released for a two-week period before he returned to jail again in March 2012. He recalled that he resolved his pending charges by entering into a plea agreement in which he received an effective sentence of 12 years, suspended to probation following the service of 365 days in jail. His release date was set for March 27, 2014.

Father admitted that he had protected sex with Mother on one occasion and that he knew of Mother's pregnancy. He claimed that he did not believe that he was the father because Mother asserted that another man was the Child's father. He acknowledged that he never attempted to establish his paternity and that he first learned that he might be the father in May 2012, when Christina Foster-Cremeans, a DCS caseworker, scheduled his paternity test and then informed him of the positive test results in July 2012.

---

[2]Mother voluntarily surrendered her parental rights to the Child and is not a party to this appeal.

Father acknowledged that he had not established a relationship with the Child due to his incarceration. He had also not attended any parenting classes because such classes were not offered at the county jail. He related that once he was released, he planned to marry his fiancé, who was in the process of purchasing a home in Nashville, Tennessee, near the Child. He claimed that his brother, who was a supervisor for Charter Communications, was in the process of securing him a position with the company. He acknowledged that he would need help once he was released from jail but asserted that he wanted to establish a relationship with the Child and eventually parent the Child.

Ms. Foster-Cremeans testified that the Child had been placed with a foster mother that had already adopted one of the Child's siblings and had expressed a desire to adopt the Child as well. She related that the Child had resided in the same foster home for approximately three years. She first learned of Father's existence in May 2012. She acknowledged that Father was unable to complete parenting classes or any other classes that would help him parent the Child because such classes were not offered in the county jail. She admitted that Father had shown a willingness to participate in programs upon his release. She explained that despite Father's willingness to better himself, she did not want the Child to languish in custody while Father attempted to establish himself as a suitable placement.

Following the presentation of the above evidence, the trial court declined to terminate Father's parental rights on the ground of abandonment for failure to support and failure to visit. However, the court held that Father engaged in conduct prior to incarceration that exhibited a wanton disregard for the Child's welfare and that the conditions which led to the removal persisted. The court further held that termination of his parental rights was supported by the statutory ground of confinement under a sentence of ten years or more. The court likewise found that termination of Father's parental rights was in the best interest of the Child. This timely appeal followed.

## II. ISSUES

We consolidate and restate the issues raised on appeal by Father as follows:

A. Whether clear and convincing evidence supports the trial court's termination of Father's parental rights to the Child pursuant to Tennessee Code Annotated section 36-1-102(1)(A)(iv).

B. Whether despite reasonable efforts by DCS, clear and convincing evidence supports the trial court's termination of Father's parental rights to the Child pursuant to Tennessee Code Annotated section 36-1-113(g)(3).

C.   Whether clear and convincing evidence supports the trial court's termination of Father's parental rights to the Child pursuant to Tennessee Code Annotated section 36-1-113(g)(6).

## III.  STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children. *Stanley v. Illinois*, 405 U.S. 645 (1972); *In re Drinnon*, 776 S.W.2d 96, 97 (Tenn. Ct. App. 1988).  This right "is among the oldest of the judicially recognized liberty interests protected by the Due Process Clauses of the federal and state constitutions." *In re M.J.B.*, 140 S.W.3d 643, 652-53 (Tenn. Ct. App. 2004).  "Termination of a person's rights as a parent is a grave and final decision, irrevocably altering the lives of the parent and child involved and 'severing forever all legal rights and obligations' of the parent." *Means v. Ashby*, 130 S.W.3d 48, 54 (Tenn. Ct. App. 2003) (quoting Tenn. Code Ann. § 36-1-113(I)(1)).  "'[F]ew consequences of judicial action are so grave as the severance of natural family ties.'" *M.L.B. v. S.L.J.*, 519 U.S. 102, 119 (1996) (quoting *Santosky v. Kramer*, 455 U.S. 745, 787 (1982)).

While parental rights are superior to the claims of other persons and the government, they are not absolute and may be terminated upon appropriate statutory grounds. *See Blair v. Badenhope*, 77 S.W.3d 137, 141 (Tenn. 2002).  Due process requires clear and convincing evidence of the existence of the grounds for termination of the parent-child relationship. *In re Drinnon*, 776 S.W.2d at 97.  A parent's rights may be terminated only upon

(1) [a] finding by the court by clear and convincing evidence that the grounds for termination of parental or guardianship rights have been established; and

(2) [t]hat termination of the parent's or guardian's rights is in the best interest [] of the child.

Tenn. Code Ann. § 36-1-113(c).  "[A] court must determine that clear and convincing evidence proves not only that statutory grounds exist [for the termination] but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).  The existence of at least one statutory basis for termination of parental rights will support the trial court's decision to terminate those rights. *In re C.W.W.*, 37 S.W.3d 467, 473 (Tenn. Ct. App. 2000), *abrogated on other grounds by In re Audrey S.*, 182 S.W.3d 838 (Tenn. Ct. App. 2005).

The heightened burden of proof in parental termination cases minimizes the risk of erroneous decisions. *In re C.W.W.*, 37 S.W.3d at 474; *In re M.W.A., Jr.*, 980 S.W.2d 620, 622 (Tenn. Ct. App. 1998).  Evidence satisfying the clear and convincing evidence standard

establishes that the truth of the facts asserted is highly probable. *State v. Demarr*, No. M2002-02603-COA-R3-JV, 2003 WL 21946726, at *9 (Tenn. Ct. App. Aug. 13, 2003). This evidence also eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence. *In re Valentine*, 79 S.W.3d at 546; *In re S.M.*, 149 S.W.3d 632, 639 (Tenn. Ct. App. 2004); *In re J.J.C.*, 148 S.W.3d 919, 925 (Tenn. Ct. App. 2004). It produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established. *In re A.D.A.*, 84 S.W.3d 592, 596 (Tenn. Ct. App. 2002); *Ray v. Ray*, 83 S.W.3d 726, 733 (Tenn. Ct. App. 2001); *In re C.W.W.*, 37 S.W.3d at 474.

In 2010, the Tennessee Supreme Court provided guidance to this court in reviewing cases involving the termination of parental rights:

> A reviewing court must review the trial court's findings of fact de novo with a presumption of correctness under [Rule 13(d) of the Tennessee Rules of Appellate Procedure]. *See In re Adoption of A.M.H.*, 215 S.W.3d [793,] 809 [(Tenn. 2007)]. In light of the heightened burden of proof in proceedings under [Tennessee Code Annotated section] 36-1-113, the reviewing court must then make its own determination regarding whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, provide clear and convincing evidence that supports all the elements of the termination claim. *State Dep't of Children's Servs. v. Mims*, 285 S.W.3d [435,] 447-48 [(Tenn. Ct. App. 2008)]; *In re Giorgianna H.*, 205 S.W.3d 508, 516 (Tenn. Ct. App. 2006); *In re S.M.*, 149 S.W.3d 632, 640 n. 13 (Tenn. Ct. App. 2004). Appellate courts conduct a de novo review of the trial court's decisions regarding questions of law in termination proceedings. However, these decisions, unlike the trial court's findings of fact, are not presumed to be correct. *In re Angela E.*, 303 S.W.3d [240,] 246 [(Tenn. 2010)]; *In re Adoption of A.M.H.*, 215 S.W.3d at 809.

*In re Bernard T.*, 319 S.W.3d 586, 596-97 (Tenn. 2010).

## IV. DISCUSSION

### A.

Father contends that the trial court erred by finding clear and convincing evidence that he abandoned the Child by engaging in conduct prior to his incarceration that exhibited a wanton disregard for the Child's welfare. He asserts that his behavior was not willful as it related to the Child because he was unaware of his paternity of the Child. DCS responds that Father's knowledge of Mother's pregnancy put him on notice of his potential paternity of the

Child and that his conduct showed a wanton disregard for the welfare of the Child. DCS contends that despite Father's knowledge of the pregnancy, he failed to discover whether the Child was his or to curtail the behavior that led to his incarceration.

Relative to the alleged abandonment of the Child, the Tennessee Code provides, in pertinent part,

> (1)(A) For purposes of terminating the parental [] rights of [a parent] to that child in order to make that child available for adoption, "abandonment" means that:
>
> * * *
>
> (iv) A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and . . . the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child[.]

Tenn. Code Ann. § 36-1-102(1)(A)(iv).

Under this ground of abandonment, the parent's incarceration "serves only as a triggering mechanism that allows the court to take a closer look at the child's situation to determine whether the *parental behavior* that resulted in incarceration is part of a broader pattern of conduct that renders the parent unfit or poses a risk of substantial harm to the welfare of the child." *In re Audrey S.*, 182 S.W.3d at 866 (emphasis added). The court may consider any relevant conduct that occurred prior to incarceration and is not limited to reviewing the four months immediately preceding the incarceration. *Id.* at 870-71. This court has "repeatedly held that probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child." *Id.* at 867-68 (citations omitted).

While this statutory ground of abandonment does not require that the parent's action be willful, the parent's conduct cannot support this statutory ground of abandonment without the accompanying display of "a *wanton* disregard for *the welfare of the child*." Tenn. Code Ann. § 36-1-102(1)(A)(iv) (emphasis added). "[W]anton" is defined by Black's Law Dictionary, 9th edition, as "[u]nreasonably or maliciously risking harm while being utterly indifferent to the consequences." The consequences at issue in termination cases relate to

-6-

the child's welfare. In other words, the parent must be indifferent to how their conduct may affect their child's welfare. Tenn. Code Ann. § 36-1-102(1)(A)(iv). Here, Father was aware that Mother was pregnant after he had sex with her. While Father was concerned enough to question if he was the Child's father, he made no further inquiries as to his paternity after Mother openly identified another man as the Child's father. Instead, Father continued in his destructive behavior that demonstrated a "wanton disregard for his own welfare much less that of the [C]hild." *See generally State Dep't of Children's Servs. v. Stinson*, No. W2006-00749-COA-R3-PT, 2006 WL 3054604, at \*15 (Tenn. Ct. App. Oct. 30, 2006), *perm. app. denied* (Tenn. Feb. 5, 2007) (affirming termination of a father's parental rights based upon his abandonment of the child even though the mother denied the father's paternity of the child). With these considerations in mind, we conclude that the evidence does not preponderate against the trial court's finding that termination of Father's parental rights was appropriate based upon his conduct prior to incarceration and that a statutory ground existed for termination of Father's parental rights to the Child.

B.

Father argues that the statutory ground of termination relating to the persistence of conditions cannot apply to him because the removal petition related to Mother's abuse or neglect, not his. He asserts that he was never afforded the opportunity to parent the Child because he was already incarcerated when he learned of his paternity. DCS responds that the conditions that led to the Child's removal still persist, namely Father's history of criminal activity and incarceration.

Under Tennessee law, a court may terminate parental rights when:

(3) The child has been removed *from the home of the parent or guardian* by order of a court for a period of six (6) months and:

> (A) The conditions that led to the child's removal *or* other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;

> (B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and

(C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home.

Tenn. Code Ann. § 36-1-113(g)(3) (emphasis added). Termination of parental rights requires clear and convincing evidence of all three factors. *In re Valentine*, 79 S.W.3d at 550. Additionally, the persistence of conditions ground may only be applied "where the prior court order removing the child from the parent's home was based on a judicial finding of dependency, neglect, or abuse." *In re Audrey S.*, 182 S.W.3d at 874.

Here, the Child was removed based upon a finding of dependency and neglect relative to Mother. Father had not even been identified as a potential putative father at the time of removal or when the Child was subsequently adjudicated as dependent and neglected. While it can be argued that the Child was also removed because Father was unavailable to care for the Child due to his incarceration, the pertinent question in a termination proceeding based upon the statutory ground of persistence of conditions is whether Father has continued to neglect the Child. *State v. C.H.K.*, 154 S.W.3d 586, 592 (Tenn. Ct. App. 2004). Father has not had an opportunity to properly care for the Child or continue in his alleged neglect of the Child because he has been incarcerated since he learned of his paternity. *Id.* Additionally, Father's incarceration, standing alone, cannot support this ground of termination as an "other condition" when the legislature has already provided for termination due to a parent's incarceration pursuant to section 36-1-113(g)(6). *Id.* Accordingly, we conclude that the trial court erred in relying on section 36-1-113(g)(3) as a statutory ground for termination. We reverse the trial court's finding that termination of Father's parental rights was appropriate based upon the alleged persistence of conditions that led to removal. This conclusion does not end our inquiry because only one statutory ground for termination of parental rights listed in section 36-1-113(g) is sufficient to support an order terminating parental rights when termination is in the best interest of the child. *In re Audrey S.*, 182 S.W.3d at 860.

C.

Father asserts that the trial court erred in terminating his parental rights based upon his incarceration when he was only ordered to serve 1 year in jail, followed by 11 years on probation. DCS responds that the record supports the trial court's finding by clear and convincing evidence that he was confined under a sentence of ten years or more.

This question involves the interpretation of a statute. Statutory construction is a question of law that is reviewed de novo without any presumption of correctness. *In re Estate of Tanner*, 295 S.W.3d 610, 613 (Tenn. 2009). This court's primary objective is to carry out legislative intent without broadening or restricting the Act beyond its intended

scope. *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the legislature is not violated by so doing. *In re C .K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we should apply the plain meaning without complicating the task. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004). The statute at issue provides as follows:

> (g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and non-exclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:
>
> * * *
>
> (6) The parent has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court[.]

Tenn. Code Ann. § 36-1-113(g)(6). Father does not challenge the fact that the Child was under eight years of age at the time of his sentencing. Instead, he claims that this ground may not apply to him because he did not receive a sentence of confinement of ten or more years. He distinguishes his case from others that included the mere possibility of parole by arguing that he received a determinate sentence of only one year with a definite release date.

In applying this ground of termination to Father, the trial court noted that section 36-1-113(g)(5) provided, in pertinent part,

> The parent or guardian has been sentenced to more than two (2) years' imprisonment for conduct against the child who is the subject of the petition, or for conduct against any sibling or half-sibling of the child or any other child residing temporarily or permanently in the home of such parent or guardian, that has been found under any prior order of a court or that is found by the court hearing the petition to be severe child abuse, as defined in § 37-1-102. Unless otherwise stated, for purposes of this subdivision (g)(5), "sentenced" shall not be construed to mean that the parent or guardian must have actually served more than two (2) years in confinement, but shall only be construed to mean that the court had imposed a sentence of two (2) or more years upon the parent or guardian[.]

The trial court then stated,

> [T]he legislature states that "sentenced" shall not be construed to mean that the parent or guardian must actually have served more than two (2) years in confinement, but shall only be construed to mean that the Court had imposed a sentence of two (2) or more years upon the parent or guardian. By analogy in the instant case, if the legislature had wanted a period of probation to not count in the time factor, the Court feels they would have explicitly said so.

Contrary to the trial court's finding, the construction in subsection (g)(5) of "sentenced" as inclusive of non-confinement sentences, such as probation, is expressly stated in the statute to apply only to subsection (g)(5). Accordingly, the trial court erred by applying this construction to the express use of the term, "confinement," in subsection (g)(6).

Despite this error in the trial court's reasoning, a panel of this court reached a similar result in a case involving like circumstances. *See In re Caleb F.N.P.*, No. M2013-00209-COA-R3-PT, 2013 WL 5783141, at *13 (Tenn. Ct. App. Oct. 25, 2013) (upholding termination of mother's parental rights pursuant to section 36-1-113(g)(6) when she was only ordered to serve 12 days of her sentence in confinement). In upholding the termination of mother's parental rights, this court stated,

> Mother concedes that she was sentenced to twelve years of community corrections for theft of over $60,000 on September 8, 2008. Additionally, Mother concedes that [the Child] was under the age of eight at that time. Nevertheless, Mother argues that she was only "confined" for twelve days and received a community corrections sentence. She argues that because she was not confined for a period of more that ten years, the trial court erred in relying on this ground to terminate her parental rights.

> Mother's argument is meritless. This court has "repeatedly recognized that a court considering a petition for termination of parental rights based on Tenn. Code Ann. § 36-1-113(g)(6) need not look beyond the judgment of conviction and the sentence imposed by the criminal court in order to determine whether this ground for termination applies." [*In re Audrey S.*, 182 S.W.3d at 876 (citations omitted)]. It does not matter that Mother served less than ten years; we only look at the length of the sentence and age of the child at sentencing. *See In re D.M.*, No. M2009-00340-COA-R3-PT, 2009 WL 2461199, at *3 (Tenn. Ct. App. Aug. 12, 2009) (terminating parental rights of father based on Tenn. Code Ann. § 36-1-113(g)(6) even though he had completed his ten year sentence).

*Id.* In this case, the requirements of the statute have also been met, namely Father has been confined under a sentence of 10 or more years when the Child was less than 8 years of age. While the statute requires some period of confinement, the legislature did not expressly provide that the actual period of confinement must amount to 10 or more years. We decline to insert such a meaning into the statute when the obvious intention of the statute was to achieve permanency for children whose parents are subjected to the possibility of lengthy prison sentences. Indeed, the legislature expressly provided as follows:

> (a) The primary purpose of [the adoption statutes] is to provide means and procedures for the adoption of children and adults that recognize and effectuate to the greatest extent possible the rights and interests of persons affected by adoption, especially those of the adopted persons, which are specifically protected by the constitutions of the United States and the state of Tennessee and to those ends seek to ensure, to the greatest extent possible, that:
>
> * * *
>
> (5) The adoption proceedings are held in an expeditious manner to enable the child to achieve permanency, consistent with the child's best interests, at the earliest possible date[.]

Tenn. Code Ann. § 36-1-101(a). As Father is well aware from his past experience, his probation could be revoked at any time following his release, thereby subjecting the Child to an unending quest for permanency. In consideration of the foregoing, we hold that clear and convincing evidence exists in the record to support the trial court's termination of Father's parental rights based upon his confinement under a sentence of ten years or more. In light of the dissenting opinion filed in this case and the potential affect this holding could have on future cases, the issue presented on this ground for termination might merit further review by the Tennessee Supreme Court.

D.

Having concluded that there was clear and convincing evidence establishing at least one statutory ground to terminate Father's parental rights, we must now consider whether termination of Father's parental rights was in the best interest of the Child. Although Father has not appealed the court's best interest finding, we have reviewed the issue because of the gravity and finality that this decision will have on Father's parental rights. *See In re Arteria H.*, 326 S.W.3d 167, 184 (Tenn. Ct. App. 2010) (considering the best interest issue even though the issue was not raised on appeal). Following our review, we conclude that there

was clear and convincing evidence to establish that termination of Father's parental rights was in the best interest of the Child pursuant to Tennessee Code Annotated section 36-1-113(i).

## V. CONCLUSION

The judgment of the trial court is affirmed as to the court's termination of parental rights pursuant to Tennessee Code Annotated sections 36-1-102(1)(A)(iv), abandonment by conduct prior to incarceration that exhibited a wanton disregard for the child's welfare ; and 36-1-113(g)(6), confinement under a sentence of 10 years or more. The judgment of the trial court is reversed as to the court's termination of parental rights pursuant to Tennessee Code Annotated section 36-1-113(g)(3), persistence of conditions that led to removal. The case is remanded for such further proceedings as may be necessary. Costs of the appeal are taxed to the appellant, Henry Y., III.

_____
JOHN W. McCLARTY, JUDGE